1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN HYLINGER, JR.,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNION PACIFIC RAILROAD, a corporation,<br><br>                    Defendant. | Case No.  07-05151 RJB<br><br>ORDER ON DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

This matter comes before the court on defendant's Motion for Summary Judgment.  Dkt. 24. The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

PROCEDURAL AND FACTUAL BACKGROUND

The complaint in this matter alleges that the plaintiff was a locomotive engineer employed by the defendant, Union Pacific Railroad (UPRR), who engaged in railroad work in interstate commerce. Dkt. 9 at 2.  The plaintiff alleges that during the course of his employment, he developed medical conditions that interfered with his sleep rhythms.  *Id.*  The plaintiff alleges that the defendant was aware of the plaintiff's medical conditions.  Dkt. 9 at 3.

On October 15, 1994, the plaintiff fell asleep while operating a UPRR locomotive, which caused 11 cars to derail.  Dkt. 25, Exhibit A at 15.  The plaintiff obtained medical treatment and was diagnosed with sleep apnea on December 1994.  *Id.* at 81.  He was advised that he was able to work

as a locomotive engineer and that his condition was treatable.  Dkt. 9 at 2.  However, in 2002 (dkt. 25, Exhibit D), 2004 (dkt. 25, Exhibit F), and 2006 (dkt. 26 at 2), UPRR received reports that the plaintiff was falling asleep on duty.

The plaintiff alleges that on February 18, 2006, the defendant provided the plaintiff with a schedule for the plaintiff's shift from Portland to Seattle.  Dkt. 9 at 3.  The plaintiff was to report to work at 5:30 a.m. on February 19.  However, the train line-up was inaccurate and the plaintiff's train did not depart until 8:30 p.m. on February 19th.  The plaintiff's conductor alleged that the plaintiff was not alert for his shift, and the defendant pulled him from service as a locomotive engineer.  Dkt. 9 at 3.  The plaintiff's engineer certification was placed in "pending denial" status, which means that he would have to get re-certified.  Dkt. 26 at 3; *see also* CFR § 240.211  The plaintiff alleges that he was medically cleared to return to active work, but the defendant did  not permit the plaintiff to return to his prior job.  Dkt. 9 at 3.  The defendant notified the plaintiff that he could no longer safely work as an Engineer and that he was medically disqualified.  Dkt. 25, Exhibit H.

The plaintiff's union appealed this decision in July 2006, providing documentation from the plaintiff's doctor.  Dkt. 25, Exhibit I.  The doctor stated that the plaintiff may return to work as long as he has a minimum of 7 hours of sleep in a 24-hour day and could maintain a constant schedule.  *Id.* As a result, UPRR cleared the plaintiff to return to work on a fixed schedule.  Dkt. 25, Exhibit L. However, the plaintiff was unable to pass certification evaluations on November 28, 2006 and December 12, 2006, for reasons other than his medical restrictions.  Dkt. 26 at 3.

Prior to these events, the plaintiff alleges that he and his union entered into an agreement with the UPRR that an employee with a treatable sleep disorder who is receiving treatment and complying with safety and operating requirements would not be disqualified from working.  Dkt. 9 at 3.  The plaintiff retired from employment with UPRR in May 2007.  Dkt. 25, Exhibit A at 15.

The plaintiff filed a two-count complaint on March 26, 2007, naming the UPRR as defendant. The plaintiff alleges that the defendant violated the Americans with Disabilities Act, 42 U.S.C. 12111, and his civil rights by discriminating against him based upon his disability.  *Id.* at 4.  The plaintiff also alleges that the defendant violated the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51, because the defendant failed to provide the plaintiff with a reasonably safe workplace, causing the

plaintiff to develop a sleep disorder.  *Id.*  The plaintiff filed an amended complaint on June 18, 2007,

that amended the plaintiff's caption but did not change the substance of the complaint. Dkt. 9.

MOTION FOR SUMMARY JUDGMENT

On January 8, 2008, the defendant filed a motion for summary judgment under Fed.R.Civ.P.

56(e).  Dkt. 24.  The defendant contends that (1) plaintiff's FELA claim is time-barred by the statute

of limitations; (2) the defendant's FELA claim also fails on the merits because the plaintiff admits that

UPRR did not cause the injury he alleges; (3) the plaintiff is not disabled under the ADA and is not

entitled to that statute's protections; (4) even if the ADA does apply to the plaintiff, the plaintiff

cannot show that the UPRR violated the statute; (5) the plaintiff was not entitled to return to his

previous job because he had lost his engineer's certification and such accommodation would have been

unreasonable and in violation of federal law; and (6) there is no evidence that the plaintiff was treated

any differently than any other engineer, disabled or not.  *Id.* at 1-2.

The plaintiff filed a response to the defendant's motion for summary judgment on February 29,

2008.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is entitled to judgment

as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element

of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken

as a whole, could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific,

significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).

Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the

claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.

*Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical

Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

1    The determination of the existence of a material fact is often a close question.  The court must

2    consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

3    preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect. Service*

4    *Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

5    nonmoving party only when the facts specifically attested by that party contradict facts specifically

6    attested by the moving party.  The nonmoving party may not merely state that it will discredit the

7    moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the

8    claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.  Conclusory, non

9    specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan*

10   *v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).


12                                            DISCUSSION

13   **1. Claim under the Americans with Disabilities Act (ADA)**

14   The plaintiff alleges in Count I of the complaint that the defendant violated Title I of the ADA,

15   42 U.S.C. § 12111,  by discriminating against him based upon his disability. Dkt. 9 at 4.  The plaintiff

16   alleges entitlement to damages due to the defendant's failure to comply with the ADA by not returning

17   him to his former occupation or otherwise accommodating him.  Dkt. 9 at 4.

18   The defendant contends that the plaintiff may not pursue a claim under the ADA because he is

19   not disabled within the meaning of the ADA.  Dkt. 24 at 13.   The defendant further contends that

20   even if the plaintiff is considered disabled, the UPRR afforded the plaintiff reasonable accommodation.

21   *Id.*

22   To sustain a failure to accommodate claim, the plaintiff must show that (1) he had a disability

23   as defined by the ADA; (2) he was qualified to perform the essential functions of his job; (3) he gave

24   his employer notice of his disability and limitations; and (4) upon notice, the employer failed to adopt

25   measures available to it in order to accommodate the disability.  *Barnett v. U.S. Air Inc.,* 228 F.3d

26   1105, 1114 (9th Cir. 2000) (en banc), vacated in part on other grounds, 535 U.S. 391 (2002).

27   The issue here is whether the plaintiff's sleep disorder is a disability under the ADA.  To

28   sustain a failure to accommodate claim, the plaintiff must show that he has a disability as defined by

ORDER
Page - 4

the ADA. *Barnett,* 228 F.3d at 1114. To qualify as disabled under subsection (A) of the ADA's definition of disability, 42 U.S.C. § 12102(2)(A), a claimant must prove that (1) he has a physical or mental impairment; (2) the impairment limits a major life activity; and (3) the limitation upon that activity is substantial; and (4) there is a record of such impairment or one is regarded of having such an impairment. 42 U.S.C. § 12102(2)(A); see also *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir. 1999). The plaintiff bears the burden of proving that he is disabled within the meaning of the ADA. *Barnett,* 228 F.3d at 1114.

Measures taken to correct or mitigate an impairment are taken into account when determining whether an impairment is "substantially limiting." *Sutton v. United Air Lines, Inc.*, 547 U.S. 471, 482, 199 S. Ct. 2139, 144 L. Ed. 2d 450 (1999). A person whose impairment "is corrected by a mitigating measure still has an impairment, but if the impairment is corrected it does not 'substantially limit' a major life activity." *Id.* at 483. A "substantial limitation" is when a person is "unable to perform a major life activity that the average person in the general population can perform; or [was] significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to...the average person in the general population." 29 C.F.R. §1630.2(j). There are also factors to assist the court in determining whether an individual is substantially limited in a major life activity: (1) the nature and severity of impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact resulting from the impairment. *Id.* at 1630.2(I).

The plaintiff alleges that his medical condition resulted in severe limitation and disability if he was not adequately rested. Dkt. 31 at 2. The plaintiff argues that the major life activity that is substantially limited by his sleep apnea is work. Dkt. 31 at 15. Work is a major life activity for the purposes of the ADA. 29 CFR § 1630.2(I). The plaintiff does not allege that he has an impairment that substantially limits the major life activity of sleep. Dkt. 31 at 15. The plaintiff also stated in his deposition that, through use of his Continuous Positive Airway Pressure (CPAP) machine, he is able to feel fully rested with six hours of sleep. Dkt. 25, Exhibit 1 at 53. The plaintiff alleges that UPRR was aware that irregular shifts cause otherwise healthy workers chronic fatigue, and especially caused problems for workers with sleep disorders. Dkt. 31 at 3.

The defendant contends that it is entitled to summary judgment on the basis that the plaintiff's sleep apnea is not a disability under the ADA. Dkt. 24 at 13. The defendant argues that because the plaintiff was able to take measures that corrected the effects of any limitations caused by his sleep apnea, the plaintiff is not disabled under the ADA. Dkt. 24 at 13. The defendant states that the plaintiff has not adequately distinguished his on-the-job fatigue from the average person without sleep apnea, in part because in the plaintiff's deposition, he stated that "everybody was having the same problem that I was having." Dkt. 24 at 15; Dkt. 25, Exhibit A at 88.

The plaintiff has not adequately raised issues of fact as to whether his sleep apnea is a disability under the ADA. The plaintiff has failed to raise issues of fact that his sleep apnea is an impairment that substantially limits the major life activity of working. "To be substantially limited in the major life activity of working, ... one must be precluded from more than one type of job, a specialized job, or a particular job of choice.... Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 492, 119 S. Ct. 2139, 144 L. Ed. 2d. 450 (1999).

The plaintiff only states that sleep apnea interfered with his ability to perform the position of locomotive engineer, because the position did not predictably allow him 8 hours of rest between shift, nor did it limit his work to 12-hour shifts. Dkt. 31 at 16; *see also* Dkt. 26, Exhibit 1 at 8 (the work conditions for the locomotive engineer job require that the engineer be willing to work variable shifts, non-standard shifts, and night shifts.) Because "locomotive engineer" is a single job, this allegation does not support a finding that the plaintiff has a substantially limiting impairment. *See* 29 CFR 1630(j)(3)(I) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working"); *see also Sutton,* 527 U.S. at 493. The plaintiff could perform any number of other positions that allow him to get 8 hours of rest in between shifts not exceeding 12 hours. Therefore, the plaintiff has not shown that he has an impairment that substantially limits a major life activity within the meaning of the statute. *See* 42 U.S.C. § 12102.

Further, the plaintiff has failed to raise issues of material fact regarding whether he was qualified to perform the essential functions of his job. *Barnett,* 228 F.3d at 1114. The ADA gives consideration to the employer's judgment regarding essential job functions. 42 U.S.C. 12111(8). A

1  job description written before advertising the job or interviewing candidates is evidence of essential job

2  functions.  *Id.*  The work conditions listed in the locomotive engineer job description state that

3  locomotive engineers "must be willing to work non-standard hours which may include on-calls hours,

4  variable shifts, and night shifts..."  Dkt. 26, Exhibit 1 at 8.  In May 2006, the plaintiff's physician, Dr.

5  Pascualy, expressed the opinion that the plaintiff could return to work, as long as he did not alter his

6  regular sleep cycle.  Dkt. 31 at 9.  Therefore, the plaintiff's medical restrictions that he get 8 hours of

7  rest between shifts and work not more than 12-hour shifts (Dkt. 31 at 16) can not reasonably be

8  reconciled with the job requirements of a locomotive engineer.

9        Because the plaintiff has not raised issues of fact regarding whether he is a qualified individual

10  with a disability under the ADA, the court need not determine whether the defendant discriminated

11  against the plaintiff based upon disability or provided the plaintiff with reasonable accommodation.

12

13        **2. Claim under the Federal Employer's Liability Act (FELA)**

14              a. Whether the plaintiff's FELA claim may succeed on the merits

15        The complaint alleges in Count II that the defendant violated the FELA because the defendant

16  failed to provide the plaintiff with a reasonably safe workplace.  Dkt. 9 at 5.  As a result, the plaintiff

17  alleges that he was injured and caused to sustain a sleep disorder condition.  *Id.*  The plaintiff alleges

18  that he is entitled to damages for pain and suffering, loss of enjoyment of life, loss of established

19  course of living, loss of income, and expenses.  Dkt. 9 at 5.

20        The defendant contends that the plaintiff's claim fails as a matter of law, because the plaintiff

21  admits that the UPRR did not cause his sleep apnea, but rather, a "sleep disorder condition."  Dkt. 24

22  at 11.  The defendant argues that the plaintiff cannot show any negligent act on the part of UPRR that

23  caused such condition, if it even exists.  Dkt. 24 at 11.

24        An action by a railroad employee for personal injuries allegedly suffered while working for an

25  employer is governed by FELA, which states that:

26        Every common carrier by railroad while engaging in commerce...shall be liable in damages to
         any person suffering injury while he is employed by such carrier in such commerce...for such
27        injury or death resulting in whole or in part from the negligence of any of the officers, agents,
         or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence,
28        in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other
         equipment.

45 U.S.C. § 51.  Under the FELA, a plaintiff must prove that his employer was negligent, and "[i]n this respect, a plaintiff's prima facie case under the Act must include all the same elements as are found in a common law negligence action." *Davis v. Burlington Northern,* 541 F.2d 182, 185, (8th Cir. 1976), *cert. denied*, 429 U.S. 1002 (1976).  The elements of negligence are duty, breach, causation, and injury.  *Pedroza v. Bryant,* 101 Wn. 2d 226, 228, 677 P.2d 166 (1984).  The fact of injury or a medical condition alone cannot establish negligence.  *Lessee v. Union Pacific R.R. Co.*, 38 Wn. App. 802, 805-06, 690 P.2d 596 (1984), *review denied*, 105 Wn. 2d 1018 (1985).  The test is whether the railroad, by failing to exercise reasonable care, participated in a manner to effect or permit an unsafe condition.  *See Rodgers v. Missouri Pac. R.R.,* 352 U.S. 500, 506, 77 S. Ct. 443, 448, 1 L. Ed. 2d 493 (1957); see also *Bridger v. Union Ry.*, 355 U.S. 382, 386, (6th Cir. 1966).

The plaintiff claims that the defendant failed to provide the plaintiff with a reasonably safe workplace, which caused the plaintiff to sustain a sleep disorder condition.  Dkt. 9 at 5.  In the plaintiff's deposition, the plaintiff states that "I don't think [UPRR] caused my sleep apnea, but they caused a sleep disorder condition..."  Dkt. 25, Exhibit A at 191.  When asked what the sleep disorder condition caused by UPRR was, the plaintiff responded that it was "...[b]eing awake in excess of 18 hours a day."  *Id.*

To sustain a claim under the FELA, however, the plaintiff must show a negligent act on the part of the defendant.  *See Davis,* 541 F.2d at 185.  The plaintiff has not shown that "[b]eing awake in excess of 18 hours a day," is a "sleep disorder condition."  (Dkt. 25, Exhibit A at 191).  However, if this were a valid sleep disorder condition, the work specifications of a locomotive engineer state that there will be non-standard hours and variable shifts, as set forth in the collective bargaining agreement. Dkt. 26, Exhibit 1 at 8.  Variable shifts are common in that line of work.  Dkt. 33 at 53.  Therefore, even if UPRR was aware that the plaintiff was limited to working a 12-hour shift (Dkt. 31 at 13), UPRR did not fall short of the standard of care on February 19, 2006, when delays caused a variation in the plaintiff's shift.  Dkt. 9 at 3.  The plaintiff has failed to raise issues of material fact regarding whether the defendant was negligent, and whether any acts or omissions of the defendant caused his injury.  Therefore, the plaintiff cannot establish his FELA claim.

b. Whether the statute of limitations on the plaintiff's FELA claim has expired

Further, even if the plaintiff were able to raise issues of fact regarding the defendant's negligence that precluded summary judgment, the plaintiff cannot show that his claim is timely.

The defendant contends that the plaintiff's claim is time-barred because it was filed outside FELA's 3-year statute of limitations. Dkt. 24 at 11. The defendant asserts that the plaintiff's cause of action accrued by February 1995, when he received a diagnosis of obstructive sleep apnea.. Dkt. 24 at 11. The plaintiff contends that because the incident occurred in February 2006 and the suit was filed March 26, 2007, his claim is timely. Dkt. 31 at 14.

The statute of limitations brought under the FELA is three years from the day the cause of action accrued. 45 U.S.C. § 56. The statute of limitations begins to run when an employee becomes aware or in the exercise of diligence should have known that he has been injured and that his injury is work related. *Frasure v. Union Pacific R.R. Co.*, 782 F. Supp. 477, 480, (C.D. Ca. 1991); *citing Emmons v. Southern Pac. Transp. Co.*, 701 F.2d 1112, 1119 (5th Cir. 1983). To defeat a motion for summary judgment based on the statute of limitations, "[t]he burden is therefore on the [plaintiff] to allege and to prove that his cause of action was commenced within the three-year period." *Frasure* 782 F. Supp. at 480; *citing Emmons,* 701 F.2d at 1117. The fact that the plaintiff is not diagnosed by a doctor of his condition does not prevent the statute of limitations from running. *Frasure*, 782 F. Supp. at 480.

On October 15, 1994, the plaintiff was involved in an accident where he fell asleep while operating a UPRR locomotive and derailed several cars. Dkt. 25, Exhibit B at 1. As a result, the plaintiff submitted to a Fitness for Duty medical examination and a sleep study. *Id.* He was diagnosed with sleep apnea around December 29, 1994. Dkt. 25, Exhibit A, at 81. The plaintiff stated in his deposition that from 1994 to 2002, he had felt tired numerous times, usually after about ten to twelve hours on duty and he had been awake in excess of 20 hours. *Id.* at 82. He also said that he thought that the 1994 accident and other times that he fell asleep at work were caused by the large amounts of time that he was working. *Id.* at 85.

The plaintiff filed this FELA claim in March 2007, which is about 12 years after the 1994 incident he says he believes was caused by the long hours he was working. Dkt. 25, Exhibit A, at 81-85. The plaintiff was aware that the long hours that he was working were causing him to fall asleep at

work. *Id.* at 85.  Falling asleep at work due to extended hours is essentially the same "sleep disorder condition" that the plaintiff is alleging that the UPRR caused him to sustain in February 2006.  *See* Dkt. 25, Exhibit A at 191.  In the plaintiff's own words, the plaintiff was aware of the existence of this condition as far back as October 1994.  Dkt. 25, Exhibit A, at 81-85.  The plaintiff knew of this "sleep disorder condition" at least 12 years before he filed the claim, which does not comply with FELA's 3-year statute of limitations.  Therefore, the plaintiff has failed to raise issues of fact as to whether his FELA claim is time-barred.

Therefore, it is hereby

**ORDERED** that, defendant's motion for summary judgment (Dkt. 24) is **GRANTED** and the plaintiff's claims and this case are **DISMISSED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 7th day of March, 2008.

ROBERT J. BRYAN
United States District Judge

ORDER
Page - 10